IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES ANAGNOS, by and through his parents and next friends MARY ANAGNOS and GEORGE ANAGNOS,<br><br>Plaintiffs,<br><br>v.<br><br>NORRIDGE PARK DISTRICT, an Illinois municipal corporation,<br><br>Defendant. | No. 05 C 4101<br><br>Judge Wayne R. Andersen<br><br>Magistrate Judge Jeffrey Cole |

**STIPULATION OF VOLUNTARY DISMISSAL WITH THE COURT
RETAINING JURISDICTION OVER THE SETTLEMENT AGREEMENT**

Plaintiff JAMES ANAGNOS, by and through his parents and next friends Mary Anagnos and George Anagnos, and Defendant NORRIDGE PARK DISTRICT (together, with Plaintiff, the "Parties"), by their respective attorneys and pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, respectfully request the Court to enter an order dismissing all of Plaintiff's claims in the above-referenced action, with each party to bear their own fees and costs, and retaining jurisdiction to enforce the Settlement Agreement. In support of this stipulation, the Parties state as follows:

1. On or about July 15, 2005, Plaintiff filed a Complaint against Defendant alleging claims under the Americans with Disabilities Act and the Rehabilitation Act (the "Complaint").

2. On or about December 14, 2005, the Parties executed a Settlement Agreement and Mutual Release settling any claims that may exist between them and agreeing to the dismissal of the suit, with each Party to bear their own fees and costs, and with the Court (currently Magistrate Judge Jeffrey Cole pursuant to the consent of all parties) retaining jurisdiction to

1

enforce the Settlement Agreement. A copy of the Settlement Agreement is attached hereto as Exhibit A so that it will become a part of the record in this case.

WHEREFORE, the Parties respectfully request that, pursuant to Rule 41(a)(1)(ii), the Court enter an Order dismissing Plaintiff's Complaint, with each party to bear their own fees and costs, and retaining jurisdiction over the Settlement Agreement.

Dated: December 15, 2005

Respectfully submitted,

| JAMES ANAGNOS | NORRIDGE PARK DISTRICT |
|---|---|
| By: /s/ Michele L. Walton<br>One of His Attorneys | By: /s/ James J. Convery<br>One of Its Attorneys |
| ACCESS LIVING OF<br>METROPOLITAN CHICAGO<br>Kenneth M. Walden<br>Max Lapertosa<br>614 West Roosevelt Road<br>Chicago, Illinois 60607<br>Telephone: (312) 253-7000<br>Fax: (312) 253-7001 | LANER MUCHIN DOMBROW BECKER<br>LEVIN & TOMINBERG LTD.<br>James J. Convery<br>515 N. State Street<br>28th Floor<br>Chicago, Illinois 60610<br>Telephone: (312) 467-9800<br>Fax: (312) 467-9479 |
| SACHNOFF & WEAVER, LTD.<br>Jeffrey T. Gilbert<br>Michele L. Walton<br>Vanessa C. Martí<br>10 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 207-1000<br>Fax: (312) 207-6400 | |
| PUBLIC INTEREST LAW CENTER<br>OF PENNSYLVANIA<br>Judith A. Gran<br>125 S. 9th Street<br>Suite 700<br>Philadelphia, Pennsylvania 19107<br>Telephone: (215) 627-7100<br>Fax: (215) 627-3183 | |

## **CERTIFICATE OF SERVICE**

      I, Michele L. Walton, hereby certify that on December 15, 2005, I electronically filed the foregoing **Stipulation of Voluntary Dismissal** with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

James J. Convery
Gregory Robert James, Jr
515 N. State Street
28th Floor
Chicago, IL 60610
312.467.9800/
312.467.9479
jconvery@lanermuchin.com
gjames@lanermuchin.com

Ken Walden
Max Lapertosa
614 W. Roosevelt Road
Chicago, IL 60607
312.253.7000/
312.253.7001
kwalden@accessliving.org

and by U.S. Mail to the following non-registered party

Judy Gran
125 S. 9th Street
Suite 700
Philadelphia, PA 19107
215.627.7100/
215.627.3183

                                              By: /s/ Michele L. Walton
                                              Michele L. Walton

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES ANAGNOS, by and through his parents and next friends MARY ANAGNOS and GEORGE ANAGNOS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) | 
| NORRIDGE PARK DISTRICT, an Illinois Municipal Corporation, | ) ) ) ) |
| Defendant. | ) |

No. 05 C 4101

Judge Andersen
Magistrate Judge Cole

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release ("Agreement") is entered into this 14 day of December, 2005, by and between George and Mary Anagnos ("Jimmy's Parents") who brought this action on behalf of their minor son, James Anagnos ("Jimmy"), and Defendant Norridge Park District (the "Park District"), an Illinois Special District and unit of local government.

**WHEREAS**, there is now pending in the United States District Court for the Northern District of Illinois (the "Court"), Case Number 05 C 4010, an action in which Jimmy and Jimmy's Parents are plaintiffs and the Park District is the defendant (the "Lawsuit"); and

**WHEREAS**, Jimmy's Parents and the Park District (collectively, the "Parties") have agreed between and among themselves to compromise and settle the Lawsuit and any and all claims which they may have against each other that have been or might have been asserted in the Lawsuit, whether those claims belong to the Parties personally or in the case of Jimmy's parents, claims brought on behalf of Jimmy, or whether those claims are brought directly or by way of set-off or counterclaim, and except for their respective rights to enforce this Agreement and the

Document ID: 411830.6 12/7/2005 1:39:05 PM

rights and obligations arising from this Agreement, with each Party to bear its own costs, expenses and attorneys' fees incurred in the Lawsuit.

**NOW, THEREFORE**, in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in consideration of the recitals, mutual promises, covenants and agreements herein contained, Jimmy's Parents and the Park District hereby agree as follows:

## TERMS OF AGREEMENT

1. **Incorporation of Recitals.** The above Recitals are incorporated herein by reference as if fully stated herein. Jimmy's Parents and the Park District each agree that the recitals set forth above are true and correct.

2. **Stipulation and Dismissal.** Jimmy's Parents agree to execute through their attorneys a Stipulation of Voluntary Dismissal, dismissing the Lawsuit on behalf of Jimmy, with each Party to bear its own costs and attorneys' fees, but permitting the Court, as set forth in paragraph three (3) below, to retain jurisdiction over this matter to enforce the terms of this Agreement. A copy of the Stipulation is attached hereto as Exhibit A.

3. **Continuing Jurisdiction.** The rights and obligations of the Parties set forth in this Agreement shall be conditioned on the Court entering an Order pursuant to which Magistrate Judge Cole will retain jurisdiction over this matter to enforce the terms of this Agreement. The Parties agree to execute all papers necessary to consent to the exercise of jurisdiction by Magistrate Judge Cole. The Parties agree that the continuing jurisdiction by Magistrate Judge Cole, pursuant to this Agreement, is a condition precedent to the Parties' consent to be bound to the terms of this Agreement. The Parties agree that the Parties' obligations under this Agreement and the Magistrate Judge's jurisdiction over this Agreement will terminate at the end of the

school year during which Jimmy reaches age twelve (12) and is no longer eligible for the Park District's school-age program.

4. **Mutual Release.**

a. For and in consideration of the promises, covenants and agreements contained herein, Jimmy's Parents on behalf of themselves, their legal representatives, successors and assigns, do hereby release and discharge the Park District and all of its elected and appointed officials, officers, directors, partners, employees, attorneys, agents, legal representatives, risk pools, the West Suburban Special Recreation Association ("WSSRA"), and all of their successors, and assigns, from all causes of action, claims, charges, obligations, contracts, costs, attorneys' fees and interests which they had or may now have against the Park District from the beginning of time up to and including the date of this Agreement, whether brought on behalf of themselves or on behalf of their son, Jimmy. Jimmy's Parents do not intend to release and do not release any claim or remedy they may have against the Park District in the event of and arising from breach of this Agreement, including without limitation an action to enforce the Settlement Agreement.

b. For and in consideration of the promises, covenants and agreements contained herein, the Park District on behalf of itself and all of its elected and appointed officials, officers, directors, partners, employees, attorneys, agents, legal representatives, successors and assigns does hereby release and discharge Jimmy and Jimmy's Parents from all causes of action, claims, charges, obligations, contracts, costs, attorneys' fees and interests which it had or may now have against them from the beginning of time up to and including the date of this Agreement. The Park District does not intend to release and does not release any claim or remedy they may have against Jimmy and Jimmy's Parents in the event of and arising from

3

breach of this Agreement, including without limitation an action to enforce the Settlement Agreement.

5. **Jimmy's Readmission to Park District's After School and Summer Childcare Programs.**

a. Jimmy shall be readmitted to the Park District's after school program for the 2005-2006 school year. Given that Jimmy is currently enrolled in the Salvation Army program for the 2005-2006 school year and Jimmy's Parents do not intend to remove him from that program, Jimmy shall only attend the Park District's after school childcare program on those days, including snow days, that the Park District is in session and the Salvation Army is not in session as set forth in Exhibit B. Jimmy's attendance on snow days will be contingent upon there being appropriate staffing available.

b. Jimmy's status at the Park District for reregistration purposes to the school-age program shall be that of an existing client, meaning that so long as Jimmy is not subject to a current suspension and has not been terminated by the Park District pursuant to its behavioral policy, Jimmy shall have the same opportunity to register for future Park District after school and summer childcare programs as other existing clients.

6. **Strategies and Training.**

a. Jimmy's Parents shall provide the Park District with the set of strategies that Jimmy's Parents understand are currently being used at Jimmy's school and the Salvation Army immediately. Whenever Jimmy's Parents learn that those strategies are modified, they shall make a good faith effort to provide the Park District with an updated set of strategies in writing as promptly as practicable. Jimmy's parents give their permission for the Park District and/or the WSSRA to contact Jimmy's school(s) and/or the Salvation Army to confer regarding strategies. Subject to the Park District's exercise of its authority and discretion, as set forth in

4

paragraph 6(b) below, the Park District shall provide a copy of those strategies it determines to use to current staff and new staff who are anticipated to work with Jimmy, as well as Jimmy's Parents.

  b. The Park District and/or WSSRA shall have the ultimate authority and discretion for deciding the strategies to be utilized in its after school and summer childcare programs. If the Park District and/or WSSRA determine(s) not to utilize the strategies described in paragraph 6(a) above, the Park District shall discuss that determination with Jimmy's Parents and shall make a good faith effort to have that discussion as soon as practicable. If the Park District and/or WSSRA determine(s) to utilize strategies in addition to those provided pursuant to paragraph 6(a) above, the Park District shall discuss those additional strategies with Jimmy's Parents and shall make a good faith effort to have that discussion as soon as practicable. By agreeing to this provision, Jimmy's Parents do not waive their right to claim that the Park District and/or WSSRA is/are not reasonably accommodating Jimmy. Likewise, going forward, the Park District does not waive any of its rights or defenses pursuant to the ADA or any other law.

  c. Prior to Jimmy's admission to the Park District's after school childcare program pursuant to paragraph 5(a) above, the Park District's after school and summer childcare program staff and WSSRA staff who are anticipated to work with Jimmy shall participate in a videotaped training session conducted, subject to reasonable parameters and availability, by an individual or individuals agreed upon by the Park District and Jimmy's parents. The Park District shall make a good faith effort to have any of the Park District's after school or summer childcare program staff and/or WSSRA staff who are anticipated to work with Jimmy who are

5

unable to attend the scheduled training session view the videotape of the training prior to working with Jimmy.

7. **WSSRA Aide.** The Park District shall make a good faith effort to inform Jimmy's Parents, at least one week in advance of Jimmy's attendance at the Park District's after school or summer childcare programs pursuant to paragraphs 5(a) and 5(b), of the identity of the WSSRA aide(s) who it anticipates will work with Jimmy. The Park District shall make a good-faith effort to use as the aide(s) someone who has worked with Jimmy in the past. The Parties acknowledge that, because aides may not be available on a particular day or at a given time, especially during holidays where staffing is less predicable, neither the Park District nor WSSRA can guarantee that a particular aide will be available on a particular day. The Park District, however, shall make a good faith effort to have any aide, prior to working with Jimmy, either attend the training or view the videotaped training session described in paragraph 6(c) above. The Park District and/or WSSRA shall make a good faith effort to provide the aide with a copy of the current strategies that are being used with Jimmy, described in paragraphs 6(a) and 6(b) above. The Park District shall make a good faith effort to inform the WSSRA aide(s) working with Jimmy about the rules and procedures utilized by the Park District in running its after school and summer programs.

8. **Communication Plan.**

a. Prior to Jimmy's initial return to attendance at the Park District's after school or summer childcare programs pursuant to paragraphs 5(a) or 5(b), after a substantial period of time where Jimmy has not attended a program, and following a significant change in circumstances, a meeting shall be held between the Park District, Jimmy's Parents and a WSSRA designee ("the Planning Meeting"). The Park District shall make a good faith effort to have the

6

WSSRA aide scheduled to work with Jimmy also attend the Planning Meeting. At the Planning Meeting the Parties shall discuss the strategies described in paragraphs 6(a) and 6(b) above and any issues that may be currently impacting Jimmy's behavior.

      b.     In cases where Jimmy attends the Park District's after school or summer childcare programs for more than one day in a five day period, a weekly meeting shall be held between the Park District, Jimmy's Parents and a WSSRA designee (the "Weekly Meeting"). The Parties shall make a good faith effort to have the Weekly Meeting occur at the end of the week for each week where Jimmy attends the Park District's after school or summer programs for more than one day in a five day period. The Park District shall make a good faith effort to have the WSSRA aide(s) who worked with Jimmy during the relevant week attend the Weekly Meeting. The parents will make a good-faith effort to arrive at the Park District in adequate time before the program ends for the day to have a meaningful meeting.

      c.     In cases where Jimmy attends the Park District's after school or summer childcare programs for no more than a single day in a five day period, the Park District, Jimmy's Parents and a WSSRA designee shall make a good faith effort to have a meeting at the end of that single day (the "Daily Meeting"). The Park District shall make a good faith effort to have the WSSRA aide who worked with Jimmy during the relevant day attend the Daily Meeting. The parents will make a good-faith effort to arrive at the Park District in adequate time before the program ends for the day to have a meaningful meeting.

      d.     On any occasion that the Park District provides Jimmy's Parents with an incident report form, Jimmy's parents agree to immediately acknowledge, in writing, receipt of such form. By so acknowledging receipt of the incident report, Jimmy's Parents do not admit the truth, accuracy or completeness of the content of the incident report.

Document ID: 411830.6  12/7/2005 1:39:05 PM

9.  **Behavioral Policy.**

  a.  Jimmy shall be subject to the Park District's behavioral policies. If Jimmy exhibits physical aggression or otherwise violates the Park District's rules and procedures, the Park District may give Jimmy a "strike," or take such other action permitted by the Park District's rules and procedures. Jimmy's Parents have advised the Park District that one of the attributes of Jimmy's disability is his reduced ability to conform to social norms, including the use of appropriate language. Jimmy's Parents have also advised the Park District that because of his disability Jimmy may be more susceptible to inducement by other children to use inappropriate language. Language that communicates a physical threat to a child may or may not be grounds for a strike, depending on the circumstances. Jimmy's Parents expressly grant the Park District permission to disclose Jimmy's disability to any child or parent of a child in the Park District's after school or summer childcare program.

  b.  If Jimmy is involved in an incident that qualifies as a "strike" as set forth in the preceding paragraph, the Park District shall make a reasonable effort to notify Jimmy's Parents in writing within one business day of the incident. Prior to giving Jimmy a "strike," the Park District, Jimmy's Parents and a WSSRA designee shall make a good faith effort to meet in person within one business day of Jimmy's Parents receiving notice of the incident. The Park District shall make a good faith effort to have the WSSRA aide(s) working with Jimmy on the day of the incident participate(s) in the meeting described in this paragraph. In the event that the Park District determines after this meeting to give Jimmy a "strike," it shall make a reasonable effort to notify Jimmy's Parents within one business day of so doing.

8

c.     In the event that the Park District determines to terminate Jimmy from its after school or summer childcare programs, the Park District shall notify Jimmy's Parents in writing of its decision and the reason(s) for it.

10.    **Change in Medication/Circumstances.** Jimmy's Parents agree that in the event Jimmy's medication is changed, in either the dosage level or type of medication, or if they have reason to believe that certain strategies described in paragraphs 6(a) or 6(b) above are no longer effective, they shall promptly notify the Park District in writing. Jimmy's parents agree that, while this Agreement remains in effect, they will provide the Park District and WSSRA with the identification of, and contact information for, Jimmy's current medical providers and will make good faith efforts to update this information regarding any changes. Jimmy's parents will also provide the Park District and WSSRA with written permission, as requested by any such medical providers, to consult with Jimmy's medical providers regarding Jimmy's condition, treatment and medications. The Park District shall inform Jimmy's Parents prior to consulting with Jimmy's medical providers pursuant to this paragraph of its intention to do so. The Park District acknowledges that Jimmy's Parents may participate in such a consultation if they so desire. The Anagnos' inability to participate shall not affect the Park District and/or WSSRA's ability to proceed with such a consultation. The Park District shall promptly notify Jimmy's parents in writing, if it or to its knowledge, WSSRA, has reason to believe that certain strategies described in paragraphs 6(a) or 6(b) above are no longer effective.

11.    **Representation.** Jimmy's Parents represent that, with the exception of an incident that occurred on November 18, 2005 between Jimmy and Bill Brutto of the Salvation Army, Jimmy has not, to their knowledge, struck, kicked, choked, bit or hit, or engaged in

harmful physical conduct or contact, towards anyone at Pennoyer School, Westdale School or the Salvation Army since December 2004.

12. **Jimmy's Parents**. With the exception of paragraph 11 above, where this Agreement creates duties and obligations on Jimmy's Parents, those duties and obligations can be met by either of Jimmy's Parents.

13. **No Admission of Wrongdoing/Liability**. This Agreement is not and shall not be construed as an admission of wrongdoing or liability by any Party. It is expressly understood and agreed that the terms of this Agreement are contractual and not merely recitals, and that the agreements contained herein and the consideration transferred is intended to compromise disputed claims, avoid and terminate litigation, and buy peace, and that no release or other consideration given by any Party shall be construed as an admission of wrongdoing or liability by any Party, all wrongdoing or liability being expressly denied by each Party.

14. **Representation as to Effect of Agreement**. Jimmy's Parents and the Park District represent and certify that this Agreement was reviewed, drafted and negotiated by their attorneys and that the Parties hereto participated in negotiation of the terms of the Agreement. Each Party acknowledges that it has carefully read this Agreement, has received the advice of the Party's own counsel concerning the meaning and legal effect of its terms, has knowingly and voluntarily entered into this Agreement freely and without coercion, and acknowledges that they had a reasonable time period to consider this Agreement. Each party further acknowledges that it is freely and voluntarily signing this Agreement and intends to be fully bound hereby, and that neither Party nor its agents, representatives, or attorneys made any representations concerning the terms or effects of this Agreement other than contained in the Agreement itself. The Parties

Document ID: 411830.6 12/7/2005 1:39:05 PM

DEC-14-2005 10:36       LANER MUCHIN                          312 467 1319    P.012
Case: 1:05-cv-04101 Document #: 16 Filed: 12/15/05 Page 15 of 20 PageID #:78

further acknowledge that the terms of this Agreement shall not be construed against the drafter of any particular provision.

15. **Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their successors, assigns, and representatives in any capacity.

16. **Governing Law.** This Agreement shall be governed by and construed in accordance with Illinois law, without regard to its choice of law provisions.

17. **Waiver.** A waiver by either Party of a breach of any provision of this Agreement by the other Party shall not operate or be construed as a waiver or estoppel of any subsequent breach.

18. **Entire Agreement.** This Agreement constitutes and expresses the entire understanding, agreement, and undertaking of the Parties with respect to the subject matter hereof. There is no other understanding, agreement, undertaking, representation or warranty, express or implied, which in any way limits, extends, defines or relates to the subject matter of this Agreement. This Agreement may not be altered, amended or modified except in writing signed by all of the undersigned Parties.

19. **Survivability and Severability.** If any provision of this Agreement shall be found by a court to be invalid or unenforceable, in whole or in part, then such provision shall be construed and/or modified as necessary to render it valid and enforceable, or shall be deemed excised from this Agreement, as the case may require, and this Agreement shall be construed and enforced to the maximum extent permitted by law, as if such provision had been originally incorporated herein as so modified, or as if such provision had not been originally incorporated herein, as the case may be.

Document ID: 411830.6   12/7/2005 1:39:05 PM

20. **Counterparts**. This Agreement may be executed in any number of counterparts and by facsimile, and each counterpart shall be deemed the original, and all counterparts taken together, shall constitute one agreement.

The Parties hereby acknowledge and agree to the terms of this Agreement by their signatures below.

NORRIDGE PARK DISTRICT

By: _____

Its: _Director of Parks_

Date: _12-7-05_

GEORGE ANAGNOS                    MARY ANAGNOS

_____    _____

Date: _____    Date: _____

12

20. **Counterparts**. This Agreement may be executed in any number of counterparts and by facsimile, and each counterpart shall be deemed the original, and all counterparts taken together, shall constitute one agreement.

The Parties hereby acknowledge and agree to the terms of this Agreement by their signatures below.

NORRIDGE PARK DISTRICT

By: _____

Its: _____

Date: _____

GEORGE ANAGNOS                              MARY ANAGNOS

_/s/ George Anagnos_____              _/s/ Mary Anagnos_____

Date: __12-14-05__                              Date: __12-14-05__

12

<u>**EXHIBIT A**</u>
**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES ANAGNOS, by and through his parents and next friends MARY ANAGNOS and GEORGE ANAGNOS, <br><br> Plaintiffs, <br><br> v. <br><br> NORRIDGE PARK DISTRICT, an Illinois municipal corporation, <br><br> Defendant. | ) ) ) ) No. 05 C 4101 ) ) Judge Wayne R. Andersen ) ) Magistrate Judge Jeffrey Cole ) ) ) ) ) ) |

**<u>STIPULATION OF VOLUNTARY DISMISSAL WITH THE COURT
RETAINING JURISDICTION OVER THE SETTLEMENT AGREEMENT</u>**

Plaintiff JAMES ANAGNOS, by and through his parents and next friends Mary Anagnos and George Anagnos, and Defendant NORRIDGE PARK DISTRICT (together, with Plaintiff, the "Parties"), by their respective attorneys and pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, respectfully request the Court to enter an order dismissing all of Plaintiff's claims in the above-referenced action, with each party to bear their own fees and costs, and retaining jurisdiction to enforce the Settlement Agreement. In support of this stipulation, the Parties state as follows:

1. On or about July 15, 2005, Plaintiff filed a Complaint against Defendant alleging claims under the Americans with Disabilities Act and the Rehabilitation Act (the "Complaint").

2. On or about December 14, 2005, the Parties executed a Settlement Agreement and Mutual Release settling any claims that may exist between them and agreeing to the dismissal of the suit, with each Party to bear their own fees and costs, and with the Court (currently Magistrate Judge Jeffrey Cole pursuant to the consent of all parties) retaining jurisdiction to

1

enforce the Settlement Agreement. A copy of the Settlement Agreement is attached hereto as Exhibit A so that it will become a part of the record in this case.

WHEREFORE, the Parties respectfully request that, pursuant to Rule 41(a)(1)(ii), the Court enter an Order dismissing Plaintiff's Complaint, with each party to bear their own fees and costs, and retaining jurisdiction over the Settlement Agreement.

Dated: December 15, 2005

Respectfully submitted,

| | |
|---|---|
| JAMES ANAGNOS | NORRIDGE PARK DISTRICT |
| By: /s/ Michele L. Walton<br>One of His Attorneys | By: /s/ James J. Convery<br>One of Its Attorneys |
| ACCESS LIVING OF<br>METROPOLITAN CHICAGO<br>Kenneth M. Walden<br>Max Lapertosa<br>614 West Roosevelt Road<br>Chicago, Illinois 60607<br>Telephone: (312) 253-7000<br>Fax: (312) 253-7001 | LANER MUCHIN DOMBROW BECKER<br>LEVIN & TOMINBERG LTD.<br>James J. Convery<br>515 N. State Street<br>28th Floor<br>Chicago, Illinois 60610<br>Telephone: (312) 467-9800<br>Fax: (312) 467-9479 |

SACHNOFF & WEAVER, LTD.
Jeffrey T. Gilbert
Michele L. Walton
Vanessa C. Martí
10 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 207-1000
Fax: (312) 207-6400

PUBLIC INTEREST LAW CENTER
OF PENNSYLVANIA
Judith A. Gran
125 S. 9th Street
Suite 700
Philadelphia, Pennsylvania 19107
Telephone: (215) 627-7100
Fax: (215) 627-3183

2

## **EXHIBIT B**

December 22, 2005 – January 3, 2006 (excluding December 26, 2005 and January 2, 2006)
January 16, 2006
February 20, 2006
March 6, 2006
March 27 2006 – March 31, 2006
April 14, 2006
May 29, 2006
June 9, 2006
June 12, 2006 – June 23, 2006
August 7, 2006 – August 25, 2006 (excluding August 18, 2006)